## 27599. BORDERS *v.* GLADNEY.

DECIDED SEPTEMBER 29, 1939.

*Willis Smith*, for plaintiff. *Boykin & Boykin*, for defendant.

SUTTON, J. This was a suit by J. R. Borders against J. G. Gladney and Mrs. Lou Gladney on a note for $257, payable to W. E. Borders, dated October 30, 1930, and transferred on the same date to the plaintiff. Mrs. Lou Gladney filed a plea and answer in which she set up that she was surety on the note, that she was a married woman living with her husband when she signed the note, that there was no consideration or benefit flowing to her for signing it, and that all of these facts were known by the plaintiff before the note was transferred to him. No defense was filed by the other defendant. The jury returned a verdict in favor of Mrs. Lou Gladney. The plaintiff's motion for new trial was overruled, and the exception is to that judgment. The controlling questions in this case are: (1) Was Mrs. Lou Gladney surety on the note sued on; and if so, (2) was this known by the plaintiff before the note was transferred to him? J. R. Borders was the father of W. E. Borders, and J. G. Gladney was the son of Mrs. Lou Gladney. There was evidence to the effect that J. G. Gladney rented land from and lived with W. E. Borders during the years 1929 and 1930; that the land belonged to J. R. Borders, the plaintiff, who furnished the fertilizer and groceries to J. G. Gladney for making the crops on this land for these years, which are included in the note sued on, and he looked after the place; that the plaintiff knew how much J. G. Gladney owed, and the cotton was carried to the warehouse and the receipts were turned over to him; that J. R. Borders and W. E. Borders were working together; that J. G. Gladney wanted to move in the fall of 1930, and W. E. Borders agreed that if Mrs. Lou Gladney would sign a note for the amount he owed for supplies, $257, he could move and take his property with him. Gladney testified: "J. R. Borders told me, a few days before she signed the note with me, that she ought to do that to help me out. She was just going my surety; and she agreed to do it." Mrs. Lou Gladney was a married woman living with her husband when she signed the note in question. She did not have anything to do with the supplies that were furnished to J. G. Gladney in 1929 and 1930, or tell anybody to furnish him supplies, and she received no consideration or benefit when she signed the note. She lived in Long View, eight miles from her son, on a place owned by J. R. Borders; that neither W. E. nor J. R. Borders said anything to her about signing the note; that she signed it when her son took it to her and told her W. E. Borders requested her to sign it.

J. G. Gladney testified that all the property he had was fifteen bushels of corn and household and kitchen furniture when he wanted to move in the fall of 1930. W. E. Borders testified that he had about 100 bushels of corn, 1000 bundles of fodder, seed out of three bales of cotton, a cow, hog, and household and kitchen furniture. He further testified: "I knew Mrs. Gladney didn't owe any of this debt. I guess my father knew it, too." There was other testimony, but that set out above is sufficient for a proper determination of the case.

1. While a wife may contract, she can not bind her separate estate by any contract of suretyship. Code, § 53-503. "The contract of suretyship is one whereby a person obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor." § 103-101. It appears from the evidence that Mrs. Lou Gladney, a married woman, signed the note in question along with her son, J. G. Gladney; that it was given for his debt, to help him out, and he still remained bound therefor. It is contended by Mrs. Gladney that these facts were known by W. E. Borders when he took the note, and that they were also known by the plaintiff, J. R. Borders, before the note was transferred to him. We are of the opinion that the jury was authorized to find from the evidence that Mrs. Gladney was surety on the note for her son, and that this fact, together with the other facts set up in her plea, existed and were known by the plaintiff before the note was transferred to him. Of course, it is a well-settled principle of law in this State that a wife is a feme sole as to her separate estate, and that she can execute a binding contract where the same is an original undertaking on her part. It was contended by the plaintiff that the signing of this note by Mrs. Gladney was an original undertaking on her part, and that she was bound thereby; and it was further contended that the plaintiff was a bona fide purchaser of the note for value, before maturity, and without any notice that Mrs. Gladney was surety thereon, if in fact she were. But, under the evidence as above stated, the jury was authorized to find contrary to these contentions.

Grounds 1, 2, and 3 of the amendment to the motion for new trial, which complain of certain testimony on cross-examination of W. E. Borders, a witness for the plaintiff, being admitted over ob-

jection as being irrelevant and immaterial, are without merit. The questions and answers complained of are as follows: "Q. How much fertilizer did you furnish him in 1929? A. I don't remember. Q. How much fertilizer did you furnish him in 1930?" (No answer to this.) "Q. How much cotton did he make in 1929? A. I don't remember. Q. How much corn in 1930?" (No answer to this.) "Q. How many bales did you get off of that farm, when Mr. Gladney worked it in 1930? A. I can not tell. Q. It was thirteen bales, wasn't it? A. I can not tell. Q. Who carried that cotton to the gin? A. He carried some, and I carried some." The witness was on cross-examination, and in response to the questions he answered that he did not know. Furthermore, there was an issue or conflict between the parties as to how much and who furnished the fertilizer, and as to how much corn and cotton were made by Gladney on the Borders' place. For this reason no error is shown with respect to the evidence therein complained of.

Ground 4 complains of the following charge of the court: "Mrs. Lou Gladney contends that she was surety on the note, and that the plaintiff, J. R. Borders, knew that she was surety at the time he took the note. If that is the truth about the matter, then under the law you could not find against her. You would find in favor of her." This charge was not erroneous on the ground that there was no evidence to authorize it, or that it was an expression and intimation of an opinion by the court that the plaintiff took the note with notice that Mrs. Lou Gladney was surety thereon. This was one of the main issues in the case, and the court properly submitted it to the jury under the pleadings and the evidence.

The other special grounds are merely an elaboration of the general grounds of the motion, and require no further mention.

*Judgment affirmed. Felton, J., concurs. Stephens, P. J., concurs in the judgment.*